IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FAYE M. SEARCY, et al., § | |
|     Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:14-CV-02744-M-BK |
| § | |
| CITIMORTGAGE, INC., § | |
|     Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3*, this case was referred to the magistrate judge for pretrial management. The Court now considers *Defendant CitiMortgage, Inc.'s Motion for Summary Judgment*, Doc. 57. For the reasons that follow, it is recommended that Defendant's motion be **GRANTED**.

**I. PROCEDURAL HISTORY**

Plaintiffs Faye M. Searcy and Bobby C. Searcy filed this suit against Defendant CitiMortgage, Inc., in connection with the foreclosure of their home, located at 2618 Amber Waves Lane in Lancaster, Texas ("the Property"). Doc. 30 at 2. Plaintiffs originally brought this action in the 160th Judicial District Court of Dallas County, Texas, against Defendant and the law firm, Shapiro Schwartz LLP ("Shapiro"), and it was timely removed. Doc. 1. After Plaintiffs were granted leave to amend their complaint, Shapiro was voluntarily dismissed from the lawsuit, Doc. 19, and Defendant moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), Doc. 20. Defendant's motion to dismiss was granted in part; however, Plaintiffs were also granted leave to amend their First Amended Complaint. Doc. 27. Plaintiffs subsequently filed their Second Amended Complaint asserting claims for (1) violations of the Real Estate Settlement Procedures Act (RESPA), (2) violations of the Texas Debt Collection Act

(TDCA), and (3) unjust enrichment, Doc. 30 at 8-14. Plaintiffs seek a declaratory judgment, specific performance, an accounting, and equitable relief. Doc. 30 at 14-18. In August 2016, Defendant moved for summary judgment on all of Plaintiffs' claims, Doc. 57; Doc. 58, which, along with Plaintiffs' response, Doc. 63; Doc. 64, and Defendant's reply, Doc. 68; Doc. 69, the Court now considers.

## II. FACTS[1]

Plaintiff Faye Searcy ("Ms. Searcy") purchased the Property in March 2007, after signing a 30-year note in the amount of $115,679, plus interest. To secure repayment of the note, Ms. Searcy – joined by her husband, Plaintiff Bobby Searcy ("Mr. Searcy") – executed a deed of trust granting a first lien against the property. After Defendant acquired the note in May 2007, Plaintiffs struggled to make payments, ultimately applying for and receiving a Department of Housing and Urban Development (HUD) partial claim through Defendant that brought their loan current through January 2008. Doc. 59-1 at 174-75; Doc. 65-1 at 2.

In February 2008, Plaintiffs resumed making payments, but filed for Chapter 13 bankruptcy in May 2009 after again falling behind. Doc. 59-1 at 175; Doc. 65-1 at 3. The bankruptcy court entered an Order Conditioning Automatic Stay as to Debtor after Plaintiffs submitted a payment plan that was approved by Defendants. Doc. 59-1 at 96, 175. However, Plaintiffs failed to abide by the terms of the plan and the automatic stay was lifted in September 2010. Doc. 59-1 at 175.

In an effort to cure their default, Plaintiffs applied for and were granted a loan modification in April 2011, which lowered their interest rate and extended the note's maturity

---

[1] The facts are drawn from the supporting appendices the parties submitted with their summary judgment briefs.

2

date. Doc. 59-1 at 25; Doc. 65-1 at 3. Plaintiffs continued making their monthly payments for about a year. Doc. 59-1 at 26. However, in November 2012, Defendant sent Plaintiffs a letter demanding $4,683.88 to cure the default; Plaintiffs sent $2,300 to Defendant, after which no other payments on the loan were ever made. Doc. 59-1 at 28-29.

In December 2012, Plaintiffs applied for another loan modification. Doc. 59-1 at 29; Doc. 65-1 at 3. Plaintiffs were notified of their approval, conditioned on them providing proof that their bankruptcy had been discharged or that the bankruptcy court had granted them permission to proceed with the modification. Doc. 59-1 at 32, 176. However, in January 2013, after Plaintiffs failed to send the requested information, Defendant denied the modification application. Doc. 65-1 at 4.

In May 2013, Plaintiffs were notified that their loan was in default, which, if not cured, might result in acceleration of the note and foreclosure. Doc. 65-1 at 4. In response, Plaintiffs applied for another loan modification, submitting their complete loss mitigation application in July 2013. Doc. 59-1 at 176; Doc. 65-1 at 4-5. Upon receipt of the application, in August 2013, Defendant offered Plaintiffs a trial plan, wherein if they made three monthly payments of $1,011.84 and remained otherwise qualified, Defendant would permanently modify their loan. Doc. 59-1 at 40-41, 176-77. However, Plaintiffs refused to make any payments and Defendant closed the review of Plaintiffs' application. Doc. 59-1 at 40-41, 177.

In December 2013, Plaintiffs were notified that their loan was referred to foreclosure counsel, Shaprio, to begin foreclosure proceedings; Shapiro contacted Plaintiffs later that month. Doc. 59-1 at 177; Doc. 65-1 at 5. In February 2014, Shapiro notified Plaintiffs that their loan had been accelerated and that the Property would be sold at a non-judicial foreclosure sale on March 4, 2014. Doc. 59-1 at 177; Doc. 65-1 at 6.

On February 25, 2014, Defendant submitted a loss mitigation application to the North Texas Housing Coalition but not to Defendant. Doc. 59-1 at 47; Doc. 65-1 at 6. On March 3, 2014, Defendant sent a letter to Plaintiffs stating that their loan modification application was denied because it was missing requested documents. Doc. 65-1 at 6, 52. The letter stated that Plaintiffs could appeal the denial within 30 days, and that no foreclosure sale would occur during this 30-day period. Doc. 65-1 at 52. However, the Property was sold at the March 4, 2014 non-judicial foreclosure sale to Defendant for $87,150. Doc. 59-1 at 178. On March 28th, 2014, Plaintiffs notified Defendants that they wanted to appeal the non-approval decision, in accordance with the March 3, 2014 Letter. Doc. 65-1 at 7, 54. Since the foreclosure sale, Plaintiffs have remained on the Property, but have not paid property taxes or insurance. Doc. 59-1 at 50, 178.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

competent summary judgment evidence.  See *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Id.*  However, Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.

**A. RESPA Claim**

RESPA was enacted to protect defaulting borrowers from abusive mortgage practices.  *Lucas v. Ocwen Home Loan Servicing*, No. 3:13-CV-1057-G, 2014 WL 7059274, *4 (N.D. Tex. Nov. 21, 2014) (Ramirez, J.).  One of the ways it does this is by setting out loss mitigation procedures that help borrowers avoid foreclosure.  See 12 CFR § 1024.41.  Plaintiffs accuse Defendant of violating these procedures, outlined in section 1024.41(h), which state in pertinent part:

> [i]f a servicer receives a complete loss mitigation application[2] 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower. . . .  A servicer shall permit a

---

[2] A "complete loss mitigation application" is statutorily defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."  12 CFR § 1024.41(b)(1).

5

> borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.

12 CFR § 1024.41(h)(1)-(2). Plaintiffs allege that after denying the complete loss mitigation application they submitted in July 2013 ("the July Application"), Defendant refused to allow them to appeal, thereby violating section 1024.41(h). Doc. 30 at 8-9. Defendant moves for summary judgment on the grounds that section 1024.41(h) was never triggered because the July Application was submitted before January 10, 2014 – RESPA's effective date. Doc. 58 at 17-18. In response, Plaintiffs, for the first time, claim that they sent a complete loss mitigation application to Defendant in February 2014, which Defendant rejected, subsequently denying their request for an appeal. Doc. 64 at 18-19. In reply, Defendant maintains that Plaintiffs never sent it the February 2014 Application and that even if they did, it would not have triggered section 1024.41. Doc. 68 at 2-3.

It is undisputed that Plaintiffs sent the July 2013 Application to Defendant. That being said, Plaintiffs never allege in their complaint that they submitted an application in February 2014. Moreover, the chronology of events set forth in Plaintiff's Complaint indicates that the July 2013 Application was the last one submitted to Defendant prior to Plaintiffs' receipt of Defendant's March 3, 2014 letter. Doc. 30 at 8. The evidence also establishes that Defendant responded to the July 2013 Application in August 2013, offering Ms. Searcy a trial loan modification, wherein if she made three monthly payments and remained otherwise qualified, Defendant would offer her a permanent loan modification. Doc. 59 at 38-39, 176-77. However, Ms. Searcy admittedly refused to

make any such payments and Defendant closed its review of the July 2013 Application. Doc. 59-1 at 38-39, 176-77.

Defendant offers the sworn declaration of its Business Operations Analyst, Kathy Collier, that it did not receive "any other applications, requests or other documents from or on behalf of [Plaintiffs] requesting loss mitigation assistance." Doc. 59-1 at 177. And Plaintiffs' own summary judgment evidence contradicts their belated claim that they submitted a complete loan modification application to Defendant in February 2014. At her deposition, Ms. Searcy testified that Plaintiffs' February 2014 Application was not sent to Defendant, but to an organization called the North Texas Housing Coalition:

> Q: Well, you produced [the February Application]. What do you mean [CitiMortgage] didn't know about it?
> A: CitiMortgage didn't know about it.
> Q: You never submitted that application to CitiMortgage?
> A: No. Huh-uh.
> Q: Who did you submit it to?
> A: The housing coalition.
> Q: And do you know if the housing coalition ever submitted it to CitiMortgage?
> A: No, they said they didn't.
>                    * * *
> Q: Okay. After August 22nd, 2013, and between that date and the foreclosure sale date, did you submit a loss – a Loan Modification Application to CitiMortgage?
> A: I don't think so.

Doc. 59-1 at 47-48; *see also* Doc. 65-1 at 55. Based on this record, there is no genuine issue of material fact as to whether Plaintiffs submitted a complete loan modification application to Defendant after RESPA became effective on January 10, 2014. The evidence clearly establishes that they did not.

Even assuming *arguendo* that Ms. Searcy had sent the February 2014 Application to Defendant and not – as the evidence shows – to the North Texas Housing Coalition, such a fact would not defeat summary judgment on this issue. First, as noted above,

7

section 1024.41(h) requires the servicer to allow the borrower to appeal a denial if the borrower's complete loss mitigation application is submitted 90 days or more before foreclosure or before the loan is more than 120 days delinquent. 12 CFR § 1024.41(h)(1)–(2). Here, Plaintiffs' February 2014 Application met neither criterion: (1) it was submitted less than 90 days before the March 4, 2014 foreclosure sale, and (2) since Ms. Searcy admittedly had made no loan payments after November 29, 2012, her loan was more than 120 days delinquent. Doc. 59-1 at 28-29, 175; Doc. 65-1 at 3.

Thus, Defendant is entitled to summary judgment on this issue.

**B. Texas Debt Collection Act Claims**

The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). A "debt collector" is one "who directly or indirectly engages in debt collection." TEX. FIN. CODE ANN. § 392.001(6). The TDCA's definition of "debt collectors" encompasses creditors collecting their own debts. *Monroe v. Frank*, 936 S.W.2d 654, 659-60 (Tex. App.– Dallas 1996). Moreover, "the [TDCA] applies to foreclosure actions." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 732 (N.D. Tex. 2011) (Fitzwater, J.).

Plaintiffs accuse Defendant of violating sections 392.301(a)(8), 392.303(a)(2), 392.304(a)(8), 392.304(a)(19) of the TDCA. Doc. 30 at 10-13. Plaintiffs' claims are premised on the argument that Defendant violated RESPA, and that the March 3rd Letter, with its promise to delay foreclosure 30 days, constitutes a false and misleading statement entitling Plaintiffs to relief under the TDCA. Doc. 30 at 10-13. While Defendant avers, through its Business Operation Analyst, Kathy Collier, that the March 3rd Letter was

simply sent in error.  Doc. 59-1 at 177-78.  Defendant moves for summary judgment on the grounds that the March 3rd Letter was not an attempt to collect a debt, and that even if it was Plaintiffs cannot establish that they were injured by the Letter.  Doc. 58 at 23.  In response, Plaintiffs contend that even if the March 3, 2014 Letter was not an attempt to collect a debt, Defendant's misrepresentation could still be actionable under the TDCA. Doc. 64 at 24.

      Contrary to Plaintiffs' arguments, the sections of the TDCA under which Plaintiffs bring their claims apply only to actions taken "in debt collection."  *See* TEX. FIN. CODE ANN. §§ 392.301, 392.303, 392.304.  "Debt collection" is defined under the TDCA as "an action, conduct, or practice in collecting, or soliciting for collection, consumer debts that are due or alleged to be due a creditor."  TEX. FIN. CODE ANN. § 392.001(5).  Plaintiffs' argument in support is predicated on a statement in the letter that reads: "[t]he purpose of this communication is to collect a debt and any information obtained will be used for that purpose."  Doc. 65-1 at 53.  While Plaintiffs contend that this statement controls, such language does not automatically transform a communication into a debt collection effort.  *See Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-CV-0988-D, 2013 WL 3949023, at *3-4 (N.D. Tex. Aug. 1, 2013) (Fitzwater, J.).  In *Hunsinger*, the Court was called upon to determine whether a letter sent from a debt collector constituted an attempt to collect a debt.[3]  *Id.* at *3.  Similar to the instant case, the letter there contained the following line: "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose only."  *Id.*  In holding that the letter

---

[3] While the court analyzed whether the letter was a collection attempt under the Federal Debt Collection Practices Act, it later applied the same reasoning in dismissing the plaintiff's TDCA claim.  *See Hunsinger*, 2013 WL 3949023, at *3-4.

was not made for the purpose of collecting a debt, the Court found: (1) the statement – which it described as "unambiguously standard print" – was positioned in a manner indicating it was not the focal point of the letter;[4] (2) the letter concerned a topic unrelated to debt collection; and (3) the letter did not indicate "an amount that [the plaintiff] must pay, a date by when he must pay, to whom he must pay his debt, the consequences of not paying, or any other information associated with a communication intended to collect a debt." *Id.*

Here, the language "this is to collect a debt" is found on a page entirely separate from the body of the letter, below the heading "NOTICES." *See* Doc. 65-1 at 52-53. Additionally, the letter serves merely to inform Plaintiffs that Defendant was unable to modify their loan because their application was missing documents. *See* Doc. 65-1 at 52. In fact, nowhere in the letter does it state the amount Plaintiffs owe, the due date for payment, to whom Plaintiffs must pay their debt, the consequences of not paying, or any other information one might expect to see in a letter attempting to collect a debt. *See* Doc. 65-1 at 52-53; *Hunsinger*, 2013 WL 3949023 at *3.

While Plaintiffs correctly note that this Court has found loan modification communications actionable under the TDCA, the cases they cite are inapposite. *See* Doc. 64 at 24. Specifically, in those cases the plaintiffs alleged that the misrepresentations made in loan modification communications induced them into sending information to defendants who had no intention of granting modification. *See Clark v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-3590-B, 2016 WL 931216, at *5-6 (N.D. Tex. Mar. 11,

---

[4] The court noted that the statement "is denoted by asterisks and is at the very bottom of the page, below the signature line." *Hunsinger*, 2013 WL 3949023, at *3.

2016) (Boyle, J.); *Pineda v. Nationstar Mortg., LLC*, No. 15-CV-1036-K-BK, 2015 WL 6438154, at *3-4 (N.D. Tex. Sept. 29, 2015) (Toliver, J.). Here, Plaintiffs neither allege nor offer any evidence that the March 3, 2014 Letter induced them to send any information to Defendants. Indeed, short of giving them the momentary hope of a reprieve, assuming the letter was received by Plaintiffs before they learned of the March 4, 2014 foreclosure sale, Plaintiffs have not demonstrated how they relied on the misrepresentations in the March 3rd Letter to their detriment at all.

Accordingly, Plaintiffs have failed to demonstrate that there exists a genuine issue of material fact as to their TDCA claims and Defendant is entitled to summary judgment on this issue. *See Merryman v. JPMorgan Chase & Co.*, No. 12-CV-2156-M, 2012 WL 5409735, at *5 (N.D. Tex. Oct. 12, 2012) (Ramirez, J.) (dismissing plaintiffs' TDCA claims where they failed to show that defendant engaged in debt collection as defined by the TDCA); *Carrington v. Bank of America, N.A.*, No. H-12-1542, 2013 WL 265946, at *8 (S.D. Tex. Jan. 17, 2013) (same).

## C. Unjust Enrichment Claim

Lastly, Plaintiffs sue Defendant for unjust enrichment stemming from their RESPA and TDCA claims. Doc. 30 at 9; *see Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (permitting recovery under a theory of unjust enrichment where "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage"). Specifically, Plaintiffs contend that Defendant (1) engaged in unlawful collection activities, (2) improperly foreclosed on the Property, and (3) improperly collected fees related to the foreclosure. Doc. 30 at 9. As discussed *supra*, Plaintiffs have failed to establish that Defendant violated RESPA or the TDCA; thus,

Plaintiffs' unjust enrichment claim necessarily fails and Defendant is entitled to summary judgment on this issue.

## IV. RECOMMENDATION

For the foregoing reasons, *Defendant's Motion for Summary Judgment* should be **GRANTED**, and all of Plaintiff's claims should be **DISMISSED WITH PREJUDICE**.

**SIGNED** February 10, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE